# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| PEYTON TAYLOR, | ) | |
| Plaintiff, | ) | |
| v. | ) | CV419-054 |
| USA KING TRANSPORT, INC., *et al.*, | ) | |
| Defendants. | ) | |

# **ORDER**

Before the Court is defendant USA King Transport, Inc.'s Motion to Compel, doc. 34, defendant's Motion to Stay Litigation, doc. 36, plaintiff's Motion to Strike defendant USA King Transport, Inc's Expert, doc. 40, and defendants' *Daubert* Motion to Exclude or Limit the Expert Testimony of James W. Sloan, doc. 41. For the following reasons, defendant's Motion to Compel, doc. 34, is **DENIED**; the parties are **DIRECTED** to file a status report regarding the issues identified in defendant's Motion to Stay Litigation, doc. 36; plaintiff's Motion to Strike, doc. 40, is **GRANTED**; and defendants' Motion to Exclude, doc. 41, is **DENIED**.

## BACKGROUND

On March 7, 2019, plaintiff Peyton Taylor filed this suit for personal injuries and damages stemming from a motor vehicle collision between her and a tractor trailer driven by Defendant Zambrana and owned by defendant USA King Transport, Inc. Doc. 1 at 4. Defendants answered on March 29. Doc. 8, doc. 9, & doc. 10. On May 13, 2019, plaintiff filed an unopposed motion to amend the complaint which substituted National Specialty Insurance Company for York Risk Services Group, LLC after incorrectly naming the insurer. Doc. 16; doc. 19. Discovery was set to conclude on July 1, 2019, with plaintiff's expert witness reports due on August 29, 2010, and defendant's expert witness reports due on August 29, 2019. Doc. 19. On September 30, 2019, defendant USA King Transport filed a Motion to Compel Discovery seeking file materials (medical records) for Ronald Levit, Jim Shiflett, and Lisa Seago. Doc. 34. These individuals were disclosed by plaintiff as non-retained experts. Doc. 34-1; doc. 37 at 2-3. There is nothing in the record to indicate that defendant sought any alternative method to seek these medical records—for example, requesting subpoenas—beyond purporting to have sent

third-party discovery requests.[1] Plaintiff has asserted that she has provided all of the medical records in her possession and that she will continue to provide copies of any records she receives to defendants. Doc. 37 at 3. Defendants have also sought a stay of all litigation pending the conclusion of the criminal case against defendant Zambrana. Doc. 36. In support of this position, defendants argue that they have been unable to access the complete Traffic Investigation Unit file until the criminal charges have been resolved. *Id.* at 2. Finally, both plaintiff and defendants have filed motions to strike the other parties' experts. Doc. 40, doc. 41.

## ANALYSIS

### I. Defendant's Motion to Compel Discovery

Defendant seeks materials from unretained, but otherwise designated, experts. Doc. 34. As an initial matter, the Court is skeptical of defendant's assertion that they engaged in the necessary meet-and-

---

[1] The Court would note that the third-party requests at issue were a legal nullity from inception. See, e.g., Doc 34-1 at 27-31. Unlike Georgia's Civil Practice Act which permits third party discovery requests under O.C.G.A. § 9-11-34, there is no comparable mechanism under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 34(c). Subpoenas are the proper tool for non-party discovery in federal practice. Fed. R. Civ. P. 45. The Court is somewhat mystified as to why these documents, citing to state law, were served in the first place.

confer procedures required by both this Court and the Federal Rules prior to filing any discovery motions. *See, e.g.,* Fed. R. Civ. P. 37. However, setting aside defendant's failure to follow the undersigned's standing order and requesting an informal telephonic discovery dispute conference in this case or engage in a good faith effort to resolve the issue, there appears to be no additional relief which the Court may provide. Fed. R. Civ. P. 26(a)(2)(B) requires the disclosure of a written report by experts "***retained or specially employed*** to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." (Emphasis added). Otherwise, expert witnesses need only provide a disclosure of the details the subject matter of their testimony and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). Here it appears that defendant is seeking the medical records of plaintiff, rather than expert reports, so—regardless of whether the individuals are subject to Fed. R. Civ. P. 26—the expert disclosure rules do not appear applicable.

Other than the disclosures required for experts, a party is generally required to provide only records in their possession, custody, or control. *See, e.g.,* Fed. R. Civ. P. 26(a)(1)(A)(ii); Fed. R. Civ. P. 34(a)(1). Here, it

4

appears from the filings that plaintiff has turned over all of the records in her possession, custody, or control, and has requested further records with the intent to turn them over to defendant upon receipt. Doc. 37. It is unclear to the Court what further compulsion is required or necessary in this case. Accordingly, defendant's motion is **DENIED**. If defendant wishes to try again with a more robust brief detailing their resolution procedures, attempts to procure the discovery, and under what provision of the Federal Rules plaintiff is required to provide more information than already disclosed, they may do so.[2]

## II. Defendants' Motion to Stay Litigation

On October 3, 2019, defendant USA King Transport, Inc. filed a motion to stay litigation. Doc. 36. According to defendant, Zambrana was not initially cited with traffic violations. *Id.* at 2. However, a review of the crash report resulted in Zambrana receiving citations for two violations of Georgia law. *Id.* A hearing was set for those citations, although Zambrana failed to appear. *Id.* Upon learning of the violations

---

[2] Both plaintiff and defendant have sought attorneys' fees and costs in the various motions at issue in this Order. Doc. 34 at 3-4; doc. 37 at 6. As the Court is granting the parties opportunities to file supplemental briefing, the Court **DENIES** both parties' requests for sanctions, but grants them the right to refile—if they so desire via a supplemental motion.

5

through the civil lawsuit, Zambrana retained counsel and a hearing was reset for the beginning of October 2019. *Id.* Defendant requests that the Court stay this case pending the resolution of those criminal charges in part because they are impeding the parties' access to relevant information contained in the police report. *Id.* at 3-4. Plaintiff objects, arguing that defendants had ample time to raise this issue prior to the conclusion of discovery. Doc. 38.

A significant period of time has expired since this request was filed. In the meantime, the parties have filed various motions to exclude experts and the case appears to have proceeded normally. Since the time for defendant's Zambrana's reset hearing has long since passed, the Court **DIRECTS** the parties to file a status report to the Court within **ten days** from the date of this Order. This report should indicate whether all outstanding issues regarding defendant Zambrana's criminal charges has been resolved and whether the parties have received access to the remaining documentation. The Court anticipates that this status report will be a single document, although the parties may feel free to detail their positions in separate sections.

### III. Motions to Strike

    a. Plaintiff's Motion to Strike

Plaintiff concedes that defendant USA King Transport Inc., timely served plaintiff with an expert disclosure. Doc. 40. Plaintiff argues, however, that defendant's disclosure does not comply with Fed. R. Civ. P. 26. *Id.* at 1. Defendant's expert disclosures identified Collision Specialists, Inc., but did not identify an individual. Doc. 40-2 at 1. There is no other information contained in the report. Defendant did not respond to plaintiff's motion.

Fed. R. Civ. P. 26(a)(2) details the disclosure of expert testimony. Experts retained by a party must provide a written report. *Id.* That report must contain:

    (i)    a complete statement of all opinions the witness will express and the basis and reasons for them;
    (ii)    the facts or data considered by the witness in forming them;
    (iii)    any exhibits that will be used to summarize or support them;
    (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;
    (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
    (vi)    a statement of the compensation to be paid for the study and testimony in the case.

*Id.* As discussed above, non-retained experts are subject to less stringent requirements, but must still provide "a summary of the facts and opinions to which the witness is expected to testify." *Id.* As plaintiff points out, nothing in defendant's disclosure complies with this requirement. Doc. 40 at 2. Moreover, defendant has provided nothing to support their expert disclosure. Accordingly, plaintiff's motion is **GRANTED**. Defendant's expert (whoever he or she may be) is **STRICKEN**.

    b. Defendant's Motion to Strike

Defendants have also filed a motion to exclude plaintiff's expert. Doc. 41. Plaintiff provided the report of James W. Sloan who detailed a number of opinions as to the manner and method of the crash forming the basis for this case. Doc. 41-1. Most importantly, Mr. Sloan proffered the opinion that "under all evaluated scenarios, the tractor-trailer entered into Dean Forest Road while the Scion was so close that it would constitute an immediate hazard. For position reference the Scion was at all times well south of the start of the right turn lane and should have been plainly visible to the driver of the tractor-trailer." *Id.* at 6. Defendants argue that Mr. Sloan's testimony relied on "crush analysis" to determine the speed of plaintiff's vehicle. Doc. 41 at 4. However,

defendants contend that this methodology required Mr. Sloan to physically inspect the damage to plaintiff's vehicle and that he instead relied on damage obtained from body worn cameras, pictures, and eyewitness testimony. *Id.* at 4-5. It is defendants' position that such an analysis is inherently unreliable. *Id.*

Plaintiff contends that this is an inaccurate recitation of both the facts, their expert's qualifications, and the study conducted by Mr. Sloan. Doc. 43. She argues that while a formal review of structure of the car may have been more reliable, the test that was conducted was sufficiently reliable based on manufacturing specifics and the available photographs. *Id.* at 4. Plaintiff contends that defendants have failed to carry their burden to exclude plaintiff's expert. *Id.*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the U.S. Supreme Court concluded that Fed. R. Evid. 702 "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*citing Daubert*, 509 U.S. at 589 n.7, 597). The U.S. Supreme Court later held that "*Daubert's* general holding—setting forth the trial judge's general 'gatekeeping'

obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (*citing* Fed. R. Evid. 702). Incorporating these decisions, amended Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702.

In this circuit, the Court applies a three-pronged inquiry to determine whether an expert's testimony complies with Rule 702 and *Daubert*. The Court must determine whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (citations omitted). The proponent of the expert opinion bears the burden of establishing qualification, reliability, and

helpfulness by a preponderance of the evidence. *Daubert*, 509 U.S. at 592, n. 10.

For the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260-61; *see also* Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]").

The reliability "criterion remains a discrete, independent, and important requirement for admissibility." *Frazier*, 387 F.3d at 1261. The Supreme Court in *Daubert* "set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors or observations inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." *Id*. (citation omitted). "Sometimes the specific

*Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262. "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " *Id.* at 1261. Lastly, expert opinion testimony must assist the trier of fact. *Id.* "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citation omitted).

Defendants make no argument that Mr. Sloan is not qualified. Rather defendants challenge the reliability of the testimony provided by Mr. Sloan. Defendant provided an abbreviated copy of Mr. Sloan's deposition, plaintiff however, provided the entirety of the testimony. Doc. 43-2. That deposition testimony establishes that, contrary to defendants' assertions, Mr. Sloan did not base his opinions solely on eyewitness testimony and unestablished testing methodology. Rather, he "considered [the witness's] testimony in light of the physical evidence."

Doc. 43-2 at 11. Furthermore, when asked if it would be more reliable to have observed plaintiff's car rather than rely on video or still camera footage, Mr. Sloan said as follows:

> [Observation of the car would have been more [r]eliable in terms of getting exact measurements, yes. However, we have a, a vehicle that was produced to a certain set of manufacturer specifications. Those are known. Those are published. And we have clear pictures of the damage. So it's a – comparative.
>
> And when I did this analysis in both different methodologies that I used, I actually over-estimated the area damage just being as, as conservative as possible, not trying to undercut her speed by any, any stretch, but to, to give her the, the most energy that she could have had to do that damage.
>
> So laying hands on it would be nice, but given the photographic evidence that I have, I'm, I'm fine with what we were able to do.

*Id.* He further testified that because there were finite points on the car where damage was observed, it was possible to get accurate measurements regarding the damage within an inch or so. *Id.* at 11-12.

Defendants argue that a study which conducted an analysis similar to that conducted by Mr. Sloan required him to physically observe the car. However, having reviewed the record and Mr. Sloan's testimony, the Court is confident that Mr. Sloan's testimony and examination is

13

sufficiently reliable to go in front of the jury. As this Court, and others, have noted "even if expert testimony does not meet all or most of the *Daubert* factors, it 'may still be admissible.' " *Hamlett v. Carrol Fulmer Logistics Corp.*, 176 F. Supp. 3d 1360, 1367 (S.D. Ga. 2016). Moreover, it is "not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Haynes v. Lawrence Transp. Co.,* 2015 WL 5601942 at *2 (N.D. Ga. Mar. 24, 2015) (quotes and cite omitted). In this case, defendants have not proffered an argument that Mr. Sloan's testimony is not "reliable," rather, defendants argue that an alternative method of testing would be "more reliable." Whether or not physical examination of the car would have produced "more reliable" expert testimony, does not preclude the introduction of that testimony at trial. *See, e.g., Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, 2008 WL 3819752, at *4 (M.D. Fla. Aug. 12, 2008) (Arguments as to the most reliable method for calculating damages "go more to the weight of the evidence, than the admissibility of the evidence under *Daubert*."); *Corporate Fin., Inc. v. Principal Life. Ins. Co.*, 2006 WL 3365600, at *2 (Nov. 20, 2006) ("The fact that [the expert]'s opinion fails to take investment returns into account goes to the weight of his

14

testimony rather than its competence."). Finally, Mr. Sloan testified that, while he took into account the testimony of an eyewitness, his opinions were based on the physical evidence available to him. Defendants' objection to the use of this testimony was based on the fact that it was solely dependent on an eyewitness. As this does not appear to be an accurate reflection of Mr. Sloan's opinion, it is not a basis for excluding the testimony. Because the Court concludes that Mr. Sloan's opinion testimony is sufficiently reliable, Defendants' motion is **DENIED**.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Compel, doc. 34, is **DENIED**; the parties are **DIRECTED** to file a status report regarding the issues identified in defendant's Motion to Stay Litigation, doc. 36; plaintiff's Motion to Strike, doc. 40, is **GRANTED**; and defendants' Motion to Exclude, doc. 41, is **DENIED**.

**SO ORDERED,** this 9th day of April, 2020.

/s/ Christopher L. Ray
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA